UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


HORACE LEE HANKERSON,

    Plaintiff,

v.                                                Case No. 3:12cv251/LC/CJK

J. SANTOS,

    Defendant.
_____/

REPORT AND RECOMMENDATION

    This prisoner civil rights case, brought under 42 U.S.C. § 1983, is before the court on defendant's motion for summary judgment (doc. 49). Plaintiff has also submitted a motion for summary judgment (doc. 55). Neither party has responded to the opposing party's motion. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(c). After careful consideration, the undersigned concludes that the defendant's motion should be granted and plaintiff's motion denied.

BACKGROUND

    Plaintiff, an inmate of the Florida Department of Corrections ("DOC") proceeding *pro se* and *in forma pauperis*, was confined at the Blackwater River Correctional Facility ("Blackwater River CF") during the events set out in the complaint. Pending before the court is plaintiff's second amended complaint (doc.

16), in which plaintiff claims that the sole defendant, Blackwater River CF Officer J. Santos,[1] violated plaintiff's Fifth and Fourteenth Amendment rights, as well as various sections of the DOC's Legal Policy chapters, by failing to provide "safety and protection to plaintiff" from his cell mate, causing plaintiff to break his hand when he punched his cell mate.[2] (Doc. 16, p. 8). As recompense for this alleged constitutional violation, plaintiff seeks $100,000 in compensatory damages and $100,000 in punitive damages. (Doc. 16, p. 8). Defendant Santos argues that plaintiff was the aggressor in the confrontation with his cell mate and was the sole cause of the fight which resulted in plaintiff's broken hand. (Doc. 49). Defendant Santos further claims that plaintiff cannot show that an "objectively" substantial risk of harm existed or demonstrate that the defendant recognized such a threat to plaintiff's safety. Finally, defendant claims he responded reasonably to the situation given the information available to him at that time. Defendant Santos, therefore, contends he did not commit an Eighth Amendment violation and plaintiff is not eligible to recover the relief he seeks.

Taking plaintiff's version of events first, the complaint alleges that on April 24, 2012, at 7:20 p.m., plaintiff alerted Bravo dormitory officers Johnson and Santos "that his roommate Bennie Johnson . . . made a verbal threat to harm him and did have an open razor blade in his possession." (Doc. 16, p. 6). Plaintiff

---

[1] Plaintiff originally named both officers Johnson and Santos as defendants. After being unable to serve officer Johnson within the 120- day time limit imposed by the Federal Rules of Civil Procedure, the court dismissed officer Johnson from the case. (Docs. 45, 46).

[2] While plaintiff claims violations of his Fifth and Fourteenth Amendment rights, a failure to protect claim arises under the Eighth Amendment.

claims that, despite officers Johnson and Santos being "assigned" as the supervisors and security for Bravo dormitory, they "told the plaintiff that he got to go and handle his own business." (Doc. 16, p .6). In turn, plaintiff stated that he "would only defend himself." Defendant Santos and officer Johnson responded, "you got to do what you got to do, cause that is the only way you are going to be moved." (Doc. 16, p. 6). Plaintiff then informed the officers that the threats had been ongoing since September 2011 and that he had complained to "administrative[] officials" and other officers but had received no response. Plaintiff claims that officers Johnson and Santos ignored his complaints and refused to provide him protection from his cell mate.

At 7:50 p.m., only thirty minutes later,[3] plaintiff's roommate "made an attempt to harm the plaintiff by locking his eyes on plaintiff and at the spur of the moment plaintiff roommate made an attempt to pull his open razor blade from his waist of his pants . . . ." (Doc. 16, p. 7). Plaintiff "reacted with one punch at his roommate in fear that he was going to be cut and in the process . . . broke his right hand instantly." Plaintiff claims officers Johnson and Santos failed to protect him from a "serious risk of harm" and therefore caused plaintiff's hand injury. Plaintiff avers that he is unable to use seventy percent of his right hand, cannot make a complete fist, cannot do a push up, his fingers are numb, and he continues to have pain whenever he moves his hand. (Doc. 16, p. 7).

---

[3] Plaintiff does not indicate the specific date on which the incident with his roommate occurred. Given that plaintiff states the incident occurred at 7:50 p.m., shortly after the 7:20 p.m. time he talked to officers Johnson and Santos, the court believes the incident occurred on April 24, 2012.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, defendant Santos submits an affidavit. (Doc. 50-1). In the affidavit, defendant Santos claims that prior to the altercation he was "not aware of any violence, altercations or problems involving Plaintiff and/or his [cell mate] . . . ." Defendant Santos admits that plaintiff complained to him about his cell mate. Specifically, Santos says plaintiff described his cell mate as "'buggy'" and "'crazy'" and further indicated that his cell mate was "accusing him of messing with his belongings in the cell." Defendant Santos states that plaintiff then indicated "that he did not fear for his life, did not wish to speak with additional facility staff, and did not want to be removed to protective custody." Defendant Santos then went to speak with plaintiff's cell mate, who "confirmed that he had accused [plaintiff] of messing with his belongings but that there was no ongoing problem between them." (Doc. 50-1). Plaintiff's cell mate also did not fear for his life or wish to be removed to protective custody. Defendant Santos thus concluded that plaintiff's cell mate did not pose a threat to plaintiff. Instead, Santos believed plaintiff was merely trying to obtain a change in his housing situation at Blackwater River CF. Defendant Santos next posits that almost "immediately after concluding" his interview of plaintiff's cell mate, he witnessed plaintiff strike the cell mate with a closed fist in the "head/facial area." (Doc. 50-1). Defendant Santos did not see plaintiff's cell mate "make any threatening moves towards [plaintiff] prior to [plaintiff's] attack." Defendant Santos, accompanied by another officer, proceeded to break up the fight, restrain the inmates, search the cell for weapons, and place both inmates in

secure confinement. No weapons were found on either inmate. Plaintiff was subsequently determined to be the aggressor in the fight and was found guilty of battery on his cell mate. (Doc. 50-1).

Defendant also includes two grievances written by plaintiff on May 2, 2012, and May 3, 2012. (Docs. 50-2, 50-3). In the May 2, 2012 grievance, plaintiff states that he complained about his cell mate to officers Johnson and Santos and that the officers told him to "handle [his] business or check in."[4] (Doc. 50-2). Plaintiff "explained to them that [his cell mate] had a razor blade when [plaintiff] left the room." According to plaintiff, the threats "had been ongoing since September of 2011." Plaintiff indicates that "when [his] roommate . . . came up close upon me I took one punch at him and in the process . . . broke [his] right hand instantly." Plaintiff echoes this description in a subsequent grievance–"the camera shows . . . [my cell mate] walking towards me and thats [sic] when I took one punch to his face . . . ." (Doc. 50-3). Plaintiff also states that the incident occurred shortly after his cell mate had returned from talking with officers Johnson and Santos.

Based on the foregoing facts, defendant Santos argues his conduct does not evidence deliberate indifference towards the plaintiff necessary for an Eighth Amendment violation. Specifically, defendant contends that plaintiff caused his own injuries, plaintiff cannot prove that his cell mate posed an objective substantial risk of harm, the defendant was not "subjectively aware" of a serious risk of harm

---

[4] Defendant construes the "check in" remark to mean check into protective custody.

from plaintiff's cell mate, and the defendant acted reasonably in response to plaintiff's concerns.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff does not respond to defendant's motion for summary judgment. Instead, plaintiff submits his own motion for summary judgment. (Doc. 55). Plaintiff's summary judgment motion largely recites the facts outlined in the complaint. In short, on April 24, 2012, plaintiff's roommate "made a threat to harm him and did have in possession at that time, a open razor blade." (Doc. 55, p. 1). Plaintiff claims defendant Santos never attempted to search plaintiff's cell mate for the razor blade and otherwise ignored plaintiff's complaints. According to plaintiff, defendant Santos had knowledge of that threat and "was deliberately indifferent to a substantial risk of harm posed to plaintiff . . . ."

Plaintiff also includes three grievances he wrote on October 21, 2011, November 27, 2011, and December 19, 2011. The October 21, 2011 grievance contains plaintiff's complaints, directed at Lieutenant Langford, concerning similar complaints about his cell mate Bennie Johnson. The November 27, 2011 grievance was sent to the mental health department of the DOC. In the grievance, plaintiff complains that his roommate is "psychologically unstable" and "needs help." The December 19, 2011 grievance is directed towards Captain Brock and again contains similar allegations concerning his cell mate's conduct. Plaintiff notes that his cell mate accuses him of putting high blood pressure medication in the toothpaste and wipes urine all over the toilet, sink, mirror, and table. Plaintiff indicated he was "getting tired of the threats" and did not know when his

roommate was "going to try . . . [to] cut [him] with those razors." Plaintiff also includes three affidavits from fellow inmates. One affidavit, from inmate Christopher Jackson, affirms plaintiff's complaints that he did not get along with his roommate. The other two affidavits, from inmates Tavaris Lee and Otis Mack, concern plaintiff being sprayed with pepper spray after the altercation with his roommate. (Doc. 55-1). Based on the aforementioned allegations, plaintiff believes he is entitled to summary judgment.

## ANALYSIS

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder

evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

Eighth Amendment Claim

While plaintiff's complaint alleges violations of his Fifth and Fourteenth Amendment rights, a failure to protect claim arises under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 831 (1994) (noting that the failure of prison officials to protect an inmate from assault implicates the Eighth Amendment). To make a viable Eighth Amendment claim under 42 U.S.C. § 1983, plaintiff must establish two essential elements:

    1.   the conduct complained of was committed by a person acting under color of state law; and

2. this conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "To show a violation of [his] Eighth Amendment rights, Plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005 (quotation omitted). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1319-20 (quotations omitted). Simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). Prison officials may avoid Eighth Amendment liability by, inter alia, showing: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 56 (1994).

The Supreme Court has recognized that a prisoner may challenge the conditions of his confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981). A conditions-of-confinement claim requires a two-prong showing: "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)).

The Supreme Court has set a high bar for the objective component of a claim challenging a condition of confinement. The Court has observed that "the Constitution does not mandate comfortable prisons." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (*quoting Rhodes*, 452 U.S. at 349, 101 S. Ct. at 2400). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (*quoting Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required." *Thomas*, 614 F.3d at 1304 (*quoting Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)). A prison condition is unconstitutional only if it deprives the plaintiff of a human need, *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (*citing Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1994)), or otherwise "'pose[s] an unreasonable risk of serious damage to his future health' or safety," *Chandler*, 379 F.3d at 1289 (*quoting*

*Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)).

The subjective component of a conditions-of-confinement claim requires that "the official had a 'sufficiently culpable state of mind.'" *Thomas*, 614 F.3d at 1304 (*quoting Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977). "[T]he relevant state of mind is deliberate indifference." *Id*. (*citing Wilson*, 501 U.S. at 303, 111 S. Ct. at 2327). Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (quotations omitted). For an official to have subjective knowledge of the risk of harm, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Farmer*, 511 U.S. at 842-43, 114 S. Ct. at 1981. A mere negligent failure to protect an inmate does not state a claim under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986).

A viable complaint must also show that the prison official responded to the risk in an objectively unreasonable manner. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (*citing Farmer*, 511 U.S. at 834, 844-45); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) ("[O]fficials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable

measures to alleviate that risk."). The officer must have a realistic opportunity to prevent the illegal conduct. *See Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844, 114 S. Ct. at 1982-83. Finally, a plaintiff must show that the constitutional violation caused the injury. *Cottone*, 326 F.3d at 1359 (*citing Marsh*, 268 F.3d at 1028).

A. Defendant Did Not Cause Plaintiff's Injuries

First, defendant argues that plaintiff has not put forward facts sufficient to demonstrate that the defendant's actions caused plaintiff's injuries. Indeed, the focus of this court's inquiry is "on whether [defendant's] acts or omissions were the cause–not merely a contributing factor–of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.3d 1526, 1538 (11th Cir. 1993); *see Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002) ("The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."). Plaintiff alleges that his roommate "lock[ed] eyes on [him] and at the spur of the moment [his] roommate made an attempt to pull his open razor blade from his waist of his pants . . . ." In response, fearing that he would be cut, plaintiff reacted as the aggressor and struck first as a form of pre-emptive self defense. Notably, a disciplinary hearing held after the incident found that plaintiff was the aggressor

and was guilty of battery upon his cell mate. Plaintiff makes no claims that he attempted to retreat from his cell mate. Defendant Santos avers that he offered plaintiff the chance to be "removed to protective custody," but plaintiff declined. Plaintiff affirms defendant Santos' account in his May 2, 2012 grievance, in which he admits that defendant Santos offered him the option to "check in" after plaintiff complained that his roommate had verbally threatened him. Plaintiff declined defendant Santos' offer and instead returned to his cell with his roommate, resulting in the underlying incident. Further, plaintiff does not claim that his roommate actually made any overt action to injure him or give any indication whatsoever concerning his intent to harm plaintiff at that moment. In fact, plaintiff merely alleges that his roommate looked at him and attempted to pull a razor blade out of his shorts, thus necessitating plaintiff to attack the roommate.

Plaintiff cannot seek to hold an independent party to the altercation–defendant Santos–liable for plaintiff's own conduct. *See, e.g.*, Clark v. Johnson, 181 F. App'x 606, 607 (7th Cir. 2006) ("[T]he risk to [plaintiff] was of his own making, and prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner."); *Hailey v. Kaiser,* 201 F.3d 447 (10th Cir. 1999) (finding no causation under § 1983 where plaintiff was the aggressor and admitted he could have avoided the other inmate, "but instead engaged [the inmate] in an altercation which resulted in injury to [plaintiff]"); *Lemmons v. Durant*, Case No. 10-3030, 2011 WL 4633104 (C.D. Ill. Oct. 4, 2011) (finding that plaintiff who instigated the fight did not state a viable eighth amendment claim because "starting a fight or voluntarily

participating in one and then getting the worst of it does not create a failure to protect claim"). To the extent plaintiff claims his cell mate was the aggressor, he nevertheless declined defendant's offer for protective custody and placed himself in harms way. As a result, he cannot establish a failure to protect claim. *See Benner v. McAdory*, 34 F. App'x 483 (7th Cir. 2002) (holding that a plaintiff who "was immediately responsible for the unfortunate incident" could not establish the proximate causation necessary for a claim of deliberate indifference against four prison officials). Accordingly, plaintiff has not established the requisite causation necessary to hold defendant Santos liable for an Eighth Amendment violation.

### B. Defendant Did Not Disregard an Excessive Risk of Harm to Plaintiff

Second, defendant argues that plaintiff's roommate did not pose an objective risk of substantial harm and that he was not "subjectively aware" of a serious risk of harm posed by plaintiff's roommate. To find that defendant Santos acted with deliberate indifference, he must "know[] of and disregard[] an excessive risk to inmate health and safety . . . ." *Farmer*, 511 U.S. at 837. Defendant Santos "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *See Farmer*, 511 U. S. at 838. Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983 . . . ." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff claims he told the defendant "that his roommate Bennie Johnson . . . made a verbal threat to harm him and did have an open razor blade in his possession," and that the threats had been ongoing since September 2011.[5] (Doc. 16, p. 6). Given that plaintiff's cell mate's threats had been ongoing for eight months, plaintiff declined placement in protective custody and indicated he was not in fear for his life, and plaintiff's cell mate denied any ongoing problems with plaintiff, defendant Santos perceived that a threat of injury at that very moment was unlikely. *See Id.* at 1537 (holding that, "[t]he known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference"). Instead, defendant Santos avers that he believed plaintiff was merely trying to obtain a housing change, an event which was common among inmates and occurred on almost a daily basis within Blackwater River CF.[6] (Doc. 50-1). Thus, the evidence before the court does not demonstrate that defendant Santos knew of and disregarded an excessive risk to plaintiff's safety. *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (finding that the defendants were aware an inmate had the propensity for being a "problematic inmate," had a "well-documented history of prison disobedience and had been prone to violence," and had "acted crazy, roaming his cell like a 'caged animal,'" but that such "generalized awareness of risk . . . does not satisfy the

---

[5] While plaintiff claims his roommate had a razor blade, defendant Santos avers that a subsequent search revealed no razor blade in the possession of the roommate or in the cell itself.

[6] While plaintiff includes grievances from 2011 in which he complained about the mental instability of his roommate, there is no evidence–and defendant does not claim–that such grievances were seen by defendant Santos.

subjective awareness requirement); *see also Chatham v. Adcock*, 334 F. App'x 281, 293 (11th Cir. 2009) (finding that plaintiff's failure to identify any specific "'serious threat'" from a fellow inmate which he then reported to the defendants did not satisfy "'the subjective awareness requirement,'" despite the inmate being a "'problem inmate' with 'violent tendencies'"); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (finding no deliberate indifference despite the plaintiff informing the defendant that he had problems with a fellow inmate and that he feared for his life and did not want to be put into a cell with the specific inmate, because the plaintiff failed to "identify a specific prior incident, from which the defendant could infer that a substantial risk existed"). At best, defendant Santos' conduct was negligent, which is not sufficient to implicate Eighth Amendment concerns.

    C.  Defendant Acted Reasonably In Response To Plaintiff's Complaints

Finally, defendant contends that he responded reasonably to plaintiff's complaints. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. In assessing the reasonableness of a prison official's response, the court must "not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment." *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga*, 400 F.3d 1313, 1320 (11th Cir. 2005). Here, after plaintiff complained to defendant Santos about the roommate, defendant Santos proceeded to interview both plaintiff and his roommate, who denied any ongoing problems

with plaintiff. Plaintiff declined Santos' offer to place him into protective management, as did his roommate. (Doc. 50-1). Neither expressed fear for their lives. Defendant Santos believed plaintiff was merely trying to obtain a change in his cell assignment. Plaintiff attacked his roommate only thirty minutes after he first complained of his roommate to officers Johnson and Santos, and almost immediately after his roommate had returned to the cell after being interviewed by Santos. Plaintiff has not shown that defendant Santos' response to his concerns was negligent, much less deliberately indifferent and unreasonable. *See Anderson v. James*, Case No. 4:08cv549/RH/WCS, 2010 WL 3522065, at *13 n. 8 (N.D. Fla. Aug. 5, 2010) ("[I]t is Plaintiff's burden, not Defendant's, to come forward with evidence that whatever practices were followed were not professionally reasonable . . . ."). Given the short time frame between the complaint and attack, as well as the subsequent investigation defendant Santos conducted into the validity of plaintiff's concerns, the court finds that the defendant acted reasonably in response to plaintiff's complaints. Accordingly, plaintiff has not made a showing that defendant Santos violated his Eighth Amendment rights.

Fifth Amendment

The court has reviewed plaintiff's claims concerning violations of his Fifth Amendment rights and cannot discern any cognizable violations. As indicated above, plaintiff's claims are properly construed as arising under the Eighth Amendment. *See supra* p. 8.

Fourteenth Amendment

As to plaintiff's Fourteenth Amendment claims, to the extent he seeks to allege violations of the Equal Protection Clause, such claims require plaintiff to show that the government did not treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). Specifically, to establish an equal protection violation, plaintiff must demonstrate that he is similarly situated with others who received more favorable treatment, and that his discriminatory treatment was based on some constitutionally protected interest, such as race. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Plaintiff has not shown that he was treated differently from other similarly situated individuals who received more favorable treatment, nor has plaintiff shown that defendant's alleged discriminatory treatment of him was based on a constitutionally protected interest. Instead, plaintiff's complaint takes issue with defendant Santos' alleged failure to protect him from his cell mate.

As to plaintiff's due process claims, in *Sandin v. Conner*, 515 U.S. 472, 478, 484, 115 S. Ct. 2293, 132 L .Ed. 2d 418 (1995), the Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns: (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Without either the loss of gain-time credits or "atypical" confinement, the Due Process

Clause itself affords no protected liberty interest that invokes procedural protections. *Sandin v. Conner*, 515 U.S. at 487; *see also Nelson v. Green*, No. 04-14933, 2005 WL 3116747 (11th Cir. Nov. 23, 2005) (noting an inmate's due process rights are violated when: "(1) a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, or (2) when the government has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999))). After review of the complaint, plaintiff has not pled any facts that would establish a due process violation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the defendant's motion for summary judgment (doc. 49) be GRANTED and that the Clerk of Court be directed to enter final summary judgment in favor of the defendant, consistent with this order.

2.   That the plaintiff's motion for summary judgment (doc. 55) be DENIED.

3.   That all pending motions be DENIED as MOOT.

4.   That the Clerk be directed to close the file.

At Pensacola, Florida, this 25th day of September, 2014.

*s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).